**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**

HAPTIC, INC.,                           §
                                        §
                    Plaintiff,          §
                                        §
v.                                      §     Case No. 4:25-mc-331
                                        §
APPLE INC.,                             §     (Case No. 3:24-cv-02296-JSC is pending in
                                        §     the Northern District of California)
                    Defendant,          §
                                        §

**NON-PARTIES SILTSTONE CAPITAL LLC, SILTSTONE CAPITAL LITIGATION**
**FUND, LP, AND LF HAPTIC, LLC'S OPPOSED MOTION TO QUASH APPLE INC.'S**
**<u>SUBPOENAS TO PRODUCE DOCUMENTS AND TESTIFY AT A DEPOSITION</u>**

## TABLE OF CONTENTS

INTRODUCTION ....................................................................................................................1

RELEVANT BACKGROUND ...............................................................................................3

APPLICABLE LEGAL STANDARDS ..................................................................................6

ARGUMENT ..........................................................................................................................8

I.      APPLE IS ATTEMPTING TO END-RUN PARTY DISCOVERY BY
        BURDENING THE SILTSTONE ENTITIES WITH THE SUBPOENAS.......................8

II.     APPLE IS SEEKING LITIGATION FUNDING DISCOVERY THAT IS NOT
        RELEVANT TO THE CLAIMS AND DEFENSES IN THE HAPTIC ACTION. ..........10

III.    APPLE IS SEEKING LITIGATION FUNDING DISCOVERY THAT IS
        PROTECTED BY THE WORK PRODUCT DOCTRINE AND ATTORNEY-
        CLIENT PRIVILEGE....................................................................................................19

CONCLUSION.......................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allele Biotechnology & Pharms., Inc. v. Pfizer, Inc.*,
    No. 20-CV-01958-H-AGS, 2021 WL 4168175 (S.D. Cal. Sept. 13, 2021) ...........................11

*AVM Techs., LLC v. Intel Corp.*,
    No. 15-33-RGA, 2017 WL 1787562 (D. Del. May 1, 2017).............................................12, 18

*Benitez v. Lopez*,
    No. 17-cv-3827, 2019 WL 1578167 (E.D.N.Y. Mar. 14, 2019).......................................11, 17

*Colibri Heart Valve LLC v. Medtronic CoreValve LLC*,
    No. 8:20-cv-00847-DOC (JDEx), 2021 WL 10425630 (C.D. Cal. Mar. 26,
    2021) .................................................................................................................... *passim*

*Fleet Connect Sols. LLC v. Waste Connections US, Inc.*,
    No. 2:21-CV-00365-JRG, 2022 WL 2805132 (E.D. Tex. June 29, 2022) ..............................11

*GoTV Streaming, LLC v. Netflix, Inc.*,
    No. 2:22-cv-07556-RGK-SHK, 2023 WL 4237609 (C.D. Cal. May 24, 2023).....................15

*Green v. Kroger Co.*,
    No. 4:20-CV-01328, 2022 WL 1078024 (S.D. Tex. Apr. 11, 2022)..................................7, 21

*In re Hair Relaxer Mktg. Sales Pracs. & Prods. Liab. Litig.*,
    No. 23-CV-0818, 2024 WL 2133171 (N.D. Ill. Apr. 9, 2024)......................................2, 3, 11

*Hall v. Baltimore Police Dep't*,
    No. 1:24-1137-RDB, 2025 WL 509130 (D. Md. Feb. 13, 2025) ...........................................20

*Hardin v. Samsung Elecs. Co.*,
    No. 2:21-CV-00290-JRG, 2022 WL 14976096 (E.D. Tex. Oct. 25, 2022)......................21, 24

*Harper v. Everson*,
    No. 3:15-CV-00575-JHM, 2016 WL 8201785 (W.D. Ky. June 27, 2016) ...........................11

*Homeland Ins. Co. of New York v. Clinical Pathology Lab'ys, Inc.*,
    643 F. Supp. 3d 675 (W.D. Tex. 2022).............................................................................7, 21

*Hybrid Athletics, LLC v. Hylete, LLC*,
    No. 3:17-CV-1767 (VAB), 2019 WL 4127377 (D. Conn. Aug. 30, 2019)...........................11

*Impact Engine, Inc. v. Google LLC*,
    No. 3:19-cv-01301-CAB-DEB, 2020 U.S. Dist. LEXIS 194517 (S.D. Cal.
    Oct. 20, 2020) ....................................................................................................................22

*In re Kaiser Aluminum & Chem. Co.*,
    214 F.3d 586 (5th Cir. 2000) ...........................................................20

*Lambeth Magnetic Structures, LLC v. Seagate Tech. (US) Holdings, Inc.*,
    No. CV 16-538, 2018 WL 466045 (W.D. Pa. Jan. 18, 2018)............................................22, 24

*McGehee v. Texas Dep't of Crim. Just.*,
    No. MC H-18-1546, 2018 WL 3996956 (S.D. Tex. Aug. 21, 2018)........................................6

*MetroPCS v. Thomas*,
    327 F.R.D. 600 (N.D. Tex. 2018) ........................................................7

*MLC Intell. Prop., LLC v. Micron Tech., Inc.*,
    No. 14-CV-03657-SI, 2019 WL 118595 (N.D. Cal. Jan. 7, 2019)
    .........................................................................11, 13, 16, 17

*Mondis Tech., Ltd. v. LG Elecs., Inc.*,
    No. 2:07-CV-565-TJW-CE, 2011 WL 1714304 (E.D. Tex. May 4, 2011) ......................21, 24

*Mullen Industries LLC v. Apple Inc.*,
    No. 6:22-cv-00145, Dkt. 64 (W.D. Texas Oct. 19, 2022) (Albright, J.)............................1, 12

*Pipkin v. Acumen*,
    No. 1:18-cv-00113-HCN-PMW, 2019 U.S. Dist. LEXIS 206233 (D. Utah
    Nov. 26, 2019) ...........................................................................11

*Rembrandt Patent Innovations v. Apple, Inc.*,
    No. 1:15-CV-438-RP, 2015 WL 4393581 (W.D. Tex. July 15, 2015)................................8, 9

*Royal Hosp. Corp. v. Underwriters At Lloyd's*,
    No. 3:18-CV-102, 2022 WL 18436754 (S.D. Tex. Jan. 4, 2022)...........................................6

*Scrum All. Inc. v. Scrum, Inc.*,
    No. 4:20-CV-00227, 2020 WL 6559625 (E.D. Tex. Nov. 9, 2020)........................................9

*Space Data Corp. v. Google LLC*,
    No. 16-cv-03260, 2018 WL 3054797 (N.D. Cal. June 11, 2018)..........................................11

*Stemmons Enter., L.L.C. v. Fisker, Inc.*,
    No. 4:22-CV-01487, 2023 WL 7545223 (S.D. Tex. Nov. 13, 2023) ............................ *passim*

*Taction Tech., Inc. v. Apple Inc.*,
    No. 21-CV-00812-TWR-JLB, 2023 WL 4611826 (S.D. Cal. July 18, 2023)....................1, 23

*Thimes Sols., Inc. v. TP-Link USA Corp.*,
    No. CV 19-10374-SB(EX), 2022 WL 18397128 (C.D. Cal. Oct. 6, 2022)............................23

*In re TQ Delta*,
 No. CV 17-MC-328-RGA, 2018 WL 5033756 (D. Del. Oct. 17, 2018) ...............................20

*Truong v. KPC Healthcare, Inc.*,
 No. 8:23-cv-01384-SB-BFM, 2024 WL 3496865 (C.D. Cal. July 17, 2024) ........................20

*Trustees of Purdue Univ. v. STMicroelectronics, Inc.*,
 No. 6:21-cv-00727-ADA, 2023 WL 11917023 (W.D. Tex. Jan. 18, 2023) ................... *passim*

*United Access Techs., LLC v. AT&T Corp.*,
 No. CV 11-338-LPS, 2020 WL 3128269 (D. Del. June 12, 2020)
 ................................................................................................................11, 13, 14, 18

*United States v. Ocwen Loan Servicing, LLC*,
 No. 4:12-CV-543, 2016 WL 1031157 (E.D. Tex. Mar. 15, 2016) ....................................21, 24

*In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Prods. Liab.*
 *Litig.*,
 405 F. Supp. 3d 612 (D.N.J. 2019) ...................................................................................11

*VHT, Inc. v. Zillow Group, Inc.*,
 No. C15-1096JLR, 2016 WL 7077235 (W.D. Wash. Sept. 8, 2016)
 ................................................................................................................11, 13, 15, 16

*Viamedia, Inc. v. Comcast Corp.*,
 No. 16-CV-5486, 2017 WL 2834535 (N.D. Ill. June 30, 2017).........................................22, 24

*Wiwa v. Royal Dutch Petroleum Co.*,
 392 F.3d 812 (5th Cir. 2004) ...................................................................................7, 8

*Yousefi v. Delta Electric Motors, Inc.*,
 No. 13-CV-1632 RSL, 2015 WL 11217257 (W.D. Wash. May 11, 2015) ............................12

**Rules**

Fed. R. Civ. P. 26...................................................................................................... *passim*

Fed. R. Civ. P. 45......................................................................................................6, 7

Non-Parties Siltstone Capital LLC ("Siltstone"), Siltstone Capital Litigation Fund, LP ("SCLF"), and LF Haptic, LLC ("LFH") (collectively, the "Siltstone Entities"), move for an order to quash Subpoenas to Produce Documents and Subpoenas to Testify at a Deposition in a Civil Action that were served on each of the Siltstone Entities by Apple Inc. ("Apple") on February 5, 2025 (the "Subpoenas") in connection with an action pending in the Northern District of California captioned *Haptic, Inc. v. Apple Inc.*, Case No. 3:24-cv-02296-JSC (the "Haptic Action").

## **INTRODUCTION**

Apple is seeking documents and testimony from the Siltstone Entities—one of which has provided litigation funding to Plaintiff Haptic, Inc. ("Haptic") in the Haptic Action—that federal courts around the country, including those in the Fifth Circuit, repeatedly have held is either (1) not relevant and proportional to the needs of the case under Federal Rule of Civil Procedure 26(b)(1) and/or (2) constitutes protected attorney work product under Rule 26(b)(3). In fact, courts have rejected attempts by ***Apple itself*** to obtain third-party litigation funding discovery in other cases on relevance and work product grounds. *See Mullen Industries LLC v. Apple Inc.,* No. 6:22-cv-00145, Dkt. 64 (W.D. Texas Oct. 19, 2022) (Albright, J.); *Taction Tech., Inc. v. Apple Inc.*, No. 21-CV-00812-TWR-JLB, 2023 WL 4611826, at *8 (S.D. Cal. July 18, 2023). Overall, the Subpoenas—which seek broad categories of information related to Haptic's litigation funding for its lawsuit—are improper and should be quashed for three primary reasons.

***First***, the Court should require Apple to pursue litigation-funding discovery from Haptic in the underlying Haptic Action, and reject Apple's attempt to end-run its litigation-funding discovery dispute with Haptic through these unduly burdensome Subpoenas. The Siltstone Entities understand (1) Apple has sought the same litigation-funding discovery directly from Haptic, (2) Haptic has resisted producing it, and (3) as a result, Apple will likely be filing a motion to compel

1

against Haptic. This Court should therefore require Apple to litigate its discovery dispute with Haptic rather than burden the Siltstone Entities with demands for duplicative third-party discovery. Indeed, courts in the Fifth Circuit—including courts in this District—have rejected similar attempts by defendants to obtain discovery from third parties, when the defendant had not moved to compel the relevant discovery from the plaintiff. That is particularly true here, given that the Subpoenas implicate work product doctrine and attorney-client privilege concerns, which should not be adjudicated in Haptic's absence. The Court should quash the Subpoenas on undue burden grounds for that reason alone.

**Second**, to the extent the Court believes it is appropriate to adjudicate these discovery issues—rather than require Apple to litigate directly with Haptic—Apple is seeking discovery that is not relevant to the claims and defenses in the Haptic Action. The Siltstone Entities' only connection to the Haptic Action is that SCLF (not Siltstone or LFH) has provided litigation funding to Haptic. Courts in the Fifth Circuit have concluded that information regarding a party's litigation funding—*i.e.*, the very type of discovery that Apple seeks here—is outside the scope of permissible discovery under Rule 26(b)(1), unless the movant can make a "compelling showing of legitimate concern," *Trustees of Purdue Univ. v. STMicroelectronics, Inc.*, No. 6:21-cv-00727-ADA, 2023 WL 11917023, at *3 (W.D. Tex. Jan. 18, 2023), which Apple cannot do here. As one federal court recently put it, "the Court joins the ***chorus of courts*** to find that litigation funding is ***not relevant*** to the claims and defenses in the case." *In re Hair Relaxer Mktg. Sales Pracs. & Prods. Liab. Litig.*, No. 23-CV-0818, 2024 WL 2133171, at *4 (N.D. Ill. Apr. 9, 2024) (emphasis added). And none of Apple's arguments in support of the Subpoenas provide the Court with any persuasive reason to reach a different conclusion and permit this discovery.

***Third***, even if Apple could demonstrate that it is seeking litigation-funding discovery that is relevant to the Haptic Action and proportional to the needs of the Haptic Action (it cannot)—and that Apple can seek this discovery indirectly from the Siltstone Entities, rather than from Haptic directly in the first instance (it cannot)—the information sought by the Subpoenas is privileged. Indeed, even where a party seeking litigation funding discovery has made a specific, non-speculative showing of relevance, courts have routinely found that documents and communications exchanged between a litigant and its litigation funder constitute work product that is protected from disclosure. That is the case here, where any documents and other information sought by the Subpoenas in the Siltstone Entities' possession, custody, or control relating to Haptic, the 738 Patent, and the Haptic Action (except those already available to Apple) were prepared in anticipation of litigation by or for Haptic and only exchanged pursuant to a confidentiality agreement, and/or otherwise protected by the attorney-client privilege.

For those reasons, explained more fully below, the Court should quash the Subpoenas in their entirety.

## RELEVANT BACKGROUND

Siltstone provides litigation finance to plaintiffs to help them pay their lawyers and experts. *See* Declaration of Mani Walia, dated February 24, 2025 ("Walia Decl."), ¶ 3. SCLF is a fund managed by Siltstone that provides litigation funding to plaintiffs, including to Haptic in the Haptic Action. *Id.* LFH is an affiliate of Siltstone that has no operations, assets, or liabilities. *Id.* As non-parties, the Siltstone Entities have no connection to the Haptic Action, a patent infringement case, except that SCLF provided litigation funding to Haptic. *Id.* ¶ 8. Haptic obtained this litigation funding from SCLF after Haptic had already been contemplating bringing a lawsuit against Apple. *Id.* ¶ 4. Prior to exchanging any substantive information, a Siltstone affiliate

entered into a confidentiality agreement with Haptic that covered any information exchanged between the Siltstone Entities and Haptic. *Id.* ¶ 5. The Siltstone Entities have no ownership interest in the patent-in suit, they have no right to control the Haptic Action, and they have no ability to direct or influence settlement. *Id.* ¶ 9.

On February 5, 2025, Apple served two subpoenas on each of the Siltstone Entities in connection with the Haptic Action—a Subpoena to Produce Documents and a Subpoena to Testify at a Deposition. *Id.* ¶ 12, Exs. A, B, C. In its lawsuit, Haptic has alleged that Apple infringed United States Patent No. 9,996,738 (the "738 Patent") through its iPhone "Back Tap" feature, which competes with Haptic's flagship product, "Knocki." Complaint, ECF No. 1 at ¶¶ 2, 44; Walia Decl., Ex. D. The 738 Patent's named inventors are Yaniv Boshernitzan and Ohad Nezer. *Id.* at ¶ 21.

Before filing this Motion to Quash, the Siltstone Entities met and conferred with Apple on February 14, 2025 and February 19, 2025, consistent with the Court's Local Rules, and exchanged a series of emails in an effort to obviate the need for this Motion to Quash. Declaration of Robert Griffin, dated Feb. 24, 2025 ("Griffin Decl."), at Ex. A. Although the Subpoenas themselves can be read broadly, Apple explained during the meet and confer process that its Subpoenas are seeking "any information that Siltstone has regarding [the 738 Patent], Siltstone's relationship and communications with Haptic, Inc., and any financial interest Siltstone has in the '738 Patent, and/or this litigation." *Id.*, Ex. A (2/17/25 email, at 6:56 PM). Moreover, during the meet and confer process, Apple's counsel informed the Siltstone Entities' counsel that Apple believes its Subpoenas are proper for four reasons:

- ***Standing***: Apple contends that "[a]ny documents and communications that establish whether Haptic, Inc. is the de facto owner of the Asserted Patents is

important to the case," and it is "entitled to investigate and understand whether Haptic, Inc., has proper standing to bring this suit and who/which entity has the ultimate authority over all litigation decisions in this case, especially in the event of a settlement." *Id.*

- ***Witness Bias and Credibility***: Apple states it is entitled to "discover and gauge the potential biases and prejudices of third-party witnesses who may appear at trial and it goes to credibility of the witnesses as well as the plaintiff." *Id.*

- ***Valuations and Damages***: Apple asserts that "[a]ny agreements and related documents that contain or reflect valuations of the asserted patents prior to the litigation (including those by and with third parties) will inform the parties' assessment of damages in this litigation." *Id.*

- ***Merits Generally***: Apple claims that it is "entitled to inquire into any documents or testimony between Haptic Inc. and any third party that provided any assessment of the merits of this case[.]" *Id.*

In the process of meeting and conferring, Apple also told the Siltstone Entities that Haptic itself—the plaintiff in the Haptic Action—had not produced any documents relating to its litigation-funding relationship with the Siltstone Entities, and that Apple likely would be filing a motion to compel against Haptic. *Id.* ¶ 4, Ex. A (2/20/25 email at 9:20 AM and 2/22/25 email at 12:00 AM). Apple also confirmed this fact directly to the Court in the underlying Haptic Action in a Joint Case Management Statement filed on February 19, 2025: "Apple has raised discovery disputes related to litigation funding, as well as regarding the timing and content of Haptic's document production. The parties are in the process of scheduling lead counsel meet and confers

regarding these issues." *See Haptic, Inc. v. Apple, Inc.*, Case No. 3:24-cv-02296-JSC, ECF No. 141, at \*2–3 (Feb. 19, 2025).

In an attempt to obviate the need for this Motion to Quash, the Siltstone Entities offered Apple two potential solutions.  First, the Siltstone Entities offered to provide Apple with an affidavit establishing that any documents in the Siltstone Entities' possession, custody, or control that are responsive to the Subpoenas were created or exchanged subject to a non-disclosure agreement with Haptic containing confidentiality provisions.  Griffin Decl., Ex. A (2/20/25 email at 9:20 AM).  Second, the Siltstone Entities offered to postpone any motions relating to the Subpoenas until Apple had litigated its discovery dispute with Haptic in the underlying Haptic Action, which is consistent with Apple's responsibility to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." *See id.*; Fed. R. Civ. P. 45(d)(1). Apple rejected both proposals, which necessitated this Motion to Quash.  Griffin Decl., Ex. A (2/22/25 email at 12:00 AM).

## APPLICABLE LEGAL STANDARDS

"Under Rule 26(b)(1), discoverable matter must be both relevant and proportional to the needs of the case—which are related [but] distinct requirements." *Stemmons Enter., L.L.C. v. Fisker, Inc.*, No. 4:22-CV-01487, 2023 WL 7545223, at \*2 (S.D. Tex. Nov. 13, 2023) (citation omitted).  For "a subpoena issued under Rule 45," discovery "is limited to the scope of discovery permitted under Rule 26(b)(1) in the underlying action" and "[d]iscovery outside of this scope is prohibited."  *Royal Hosp. Corp. v. Underwriters At Lloyd's*, No. 3:18-CV-102, 2022 WL 18436754, at \*2 (S.D. Tex. Jan. 4, 2022).  Courts will quash subpoenas pursuant to Rule 45 that seek irrelevant discovery under Rule 26(b)(1). *See McGehee v. Texas Dep't of Crim. Just.*, No. MC H-18-1546, 2018 WL 3996956, at \*13 (S.D. Tex. Aug. 21, 2018) (quashing plaintiffs'

subpoena that sought "information that is not relevant to their underlying lawsuit"); *MetroPCS v. Thomas*, 327 F.R.D. 600, 628 (N.D. Tex. 2018) (quashing deposition subpoena that sought irrelevant discovery).

Moreover, Rule 45(c) mandates that "the court for the district where compliance is required must quash or modify a subpoena that," in relevant part, "(iii) requires the disclosure of privileged or other protected matter and no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A) (emphasis added); *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004) (same).[1]  Under Rule 26(b)(3), a party generally may not obtain discovery of "documents and tangible things that are prepared in anticipation of litigation or for trial by and for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, or agent)." Fed. R. Civ. P. 26(b)(3)(A).  Under Texas law, "[a] client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made to facilitate the rendition of professional legal services to the client ... between the client or the client's representative and the client's lawyer or the lawyer's representative." *Homeland Ins. Co. of New York v. Clinical Pathology Lab'ys, Inc.*, 643 F. Supp. 3d 675, 682 (W.D. Tex. 2022) (quoting Texas Rule of Evidence 503(b)(1)).[2]

"Whether a burdensome subpoena is reasonable [under Rule 45(c)(3)(A)] 'must be determined according to the facts of the case,' such as the party's need for the documents and the nature and importance of the litigation." *Wiwa*, 392 F.3d at 818 (citation omitted).  Assessing whether a subpoena imposes an undue burden requires weighing: "(1) [the] relevance of the

---

[1] The Siltstone Entities filed this Motion in this Court because the Subpoenas list the place of compliance as Houston, Texas.  Walia Decl., Exs. A, B, C; Fed. R. Civ. P. 45(c)(3)(A) ("the court for the district where compliance is required must quash or modify a subpoena").

[2] The same is true under federal common law.  *See, e.g.*, *Green v. Kroger Co.*, No. 4:20-CV-01328, 2022 WL 1078024, at *2 (S.D. Tex. Apr. 11, 2022) (defining "the elements of the federal common-law attorney-client privilege").

information requested; (2) the need of the party for the [information]; (3) the breadth of the [] request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested [information]; and (6) the burden imposed." *Id.* "Further, if the person to whom the request is made is a non-party, the court may also consider the expense and inconvenience to the nonparty." *Id.*

**ARGUMENT**

The Court should quash the Subpoenas because Apple is seeking litigation-funding discovery that (1) should be sought from Haptic in the first instance, (2) is irrelevant to the claims and defenses in the Haptic Action, and/or (3) is protected from disclosure under the work product doctrine or the attorney-client privilege.

## I.     APPLE IS ATTEMPTING TO END-RUN PARTY DISCOVERY BY BURDENING THE SILTSTONE ENTITIES WITH THE SUBPOENAS

In deciding whether a subpoena creates an undue burden on a non-party, courts must "balance the subpoena's benefits and burdens, and . . . consider whether the information is necessary and unavailable from any other source." *Rembrandt Patent Innovations v. Apple, Inc.*, No. 1:15-CV-438-RP, 2015 WL 4393581, at *1 (W.D. Tex. July 15, 2015) (internal quotation omitted). As the Court has made clear, "[t]hird-party discovery is 'not meant to provide an end-run around the regular discovery process under Rules 26 and 34.'" *Stemmons Enter., L.L.C.*, 2023 WL 7545223, at *1. "[A] party's refusal to produce documents sought under Fed. R. Civ. P. 26 and 34 'should be addressed by a motion to compel, not a subpoena to a nonparty.'" *Id.* (quoting *Scrum All. Inc. v. Scrum, Inc.*, No. 4:20-CV-00227, 2020 WL 6559625, at *3 (E.D. Tex. Nov. 9, 2020)).

For these reasons, courts in the Fifth Circuit reject parties' efforts to obtain third-party discovery when they can—and should—be pursuing the discovery directly from the opposing

8

party in the underlying litigation. *See Stemmons Enter., L.L.C.*, 2023 WL 7545223, at \*1 (quashing subpoenas as unduly burdensome on the ground that "[Plaintiff] should not be seeking discovery from a non-party to circumvent [Defendant]'s relevance objections to the same discovery"); *Scrum*, 2020 WL 6559625, at \*3 (quashing subpoenas as "unduly burdensome" and rejecting plaintiff's argument that "Defendants have not been forthcoming with discovery," on the ground that the plaintiff's "grievance should be addressed by a motion to compel, not a subpoena to a nonparty").

Apple knows this from other cases. Indeed, in *Rembrandt*, a court in the Western District of Texas quashed a subpoena in which the plaintiff sought discovery about Apple's products from a third-party "because the information at issue is available from Apple, a party to the litigation, any interest Plaintiffs have in obtaining said information from a non-party is far outweighed by the burden imposed." *Rembrandt*, 2015 WL 4393581, at \*1. The *Rembrandt* court explained that it was "reasonable to assume that information regarding the processors used by Apple in its products would be available from Apple, and Plaintiffs failed to show otherwise." *Id.* at \*2. Moreover, as is the case here—where Apple recently informed the Court in the underlying Haptic Action that it has a discovery dispute with Haptic regarding litigation-funding discovery—the subpoenaing party in *Rembrandt* claimed that Apple (the defendant) "has not been forthcoming with such information, but acknowledged they have yet to receive a definitive statement from Apple regarding whether such information is available or not." *Id.* Therefore, the *Rembrandt* court held that the subpoena imposed an undue burden "until and unless Plaintiffs can establish they are unable to obtain the requested information from the Defendant" (*i.e.*, Apple). *Id.*

That is precisely what Apple is attempting to do here. The Siltstone Entities understand that (1) Haptic itself has not produced the type of litigation-funding discovery that Apple seeks

through the Subpoenas, and (2) Apple will likely be filing a motion to compel against Haptic. Based on procedural posture of Apple's discovery disputes with Haptic, the Court should reject Apple's attempt to pursue litigation-funding discovery directly from the Siltstone Entities; instead, Apple's "recourse [is] to seek to compel those documents *from [Haptic]*, not to circumvent [Haptic]'s objection by issuing a subpoena for the same documents from [a] non-party." *Stemmons Enter., L.L.C.*, 2023 WL 7545223, at *1 (granting protective order).  This is especially true here where the Subpoenas implicate attorney-client privilege and work product doctrine concerns.  *See* p. 19-25 *infra*.  The Court should require Apple to litigate these discovery issues directly with Haptic—particularly given Haptic's obvious interest in protecting its own privileged materials— rather than permit Apple to end-run its discovery dispute with Haptic through these third-party Subpoenas.

## II.    APPLE IS SEEKING LITIGATION FUNDING DISCOVERY THAT IS NOT RELEVANT TO THE CLAIMS AND DEFENSES IN THE HAPTIC ACTION.

To the extent the Court disagrees and believes it is appropriate for Apple to be seeking discovery from the Siltstone Entities at this juncture rather than directly from Haptic, the Court should quash the Subpoenas because all of the information Apple seeks necessarily relates to Haptic's litigation funding, which is irrelevant to the claims and defenses in the Haptic Action and not proportionate to the needs of the Haptic Action.

Courts in the Fifth Circuit—as well as federal courts around the country— "have routinely held that information about litigation funding is largely irrelevant and thus beyond the scope of discovery absent a compelling showing of a legitimate concern (such as standing or conflicts of interest)." *Trustees of Purdue Univ.*, 2023 WL 11917023, at *3; *see also Lower48 IP LLC v. Shopify, Inc.*, No. 6:22-CV-00997, 2023 WL 11893431, at *2 (W.D. Tex. Nov. 2, 2023) ("Precedent in the Western District of Texas has consistently denied motions to compel production

of information related to litigation funding."); *Fleet Connect Sols. LLC v. Waste Connections US, Inc.*, No. 2:21-CV-00365-JRG, 2022 WL 2805132, at *3 (E.D. Tex. June 29, 2022) ("Defendant has failed to show that litigation funding agreements, if any, are relevant to the claims or defenses in this action."); *In re Hair Relaxer Mktg. Sales Pracs. & Prods. Liab. Litig.*, 2024 WL 2133171, at *4 (denying discovery into "all sources of funding that each Plaintiff had received in connection with the lawsuit" explaining that "the Court joins the chorus of courts to find that litigation funding is not relevant to the claims and defenses in the case.").[3]

Courts generally consider litigation funding discovery to be irrelevant because it is private financial information unrelated to the lawsuit's merits. *See, e.g.*, *In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Prods. Liab. Litig.*, 405 F. Supp. 3d 612, 615 (D.N.J. 2019) (holding "good cause" did not exist to compel production of litigation funding material, noting "the plethora of authority that holds that discovery directed to a plaintiff's litigation funding is irrelevant." (collecting cases)). Indeed, as numerous courts have held, the

---

[3] Those decisions are illustrative of myriad opinions in which federal courts have rejected attempts by parties to obtain documents, testimony, and other information regarding their adversary's litigation funding. *See also Allele Biotechnology & Pharms., Inc. v. Pfizer, Inc.*, No. 20-CV-01958-H-AGS, 2021 WL 4168175, at *2 (S.D. Cal. Sept. 13, 2021) (finding defendant was "not entitled" to discovery of "documents identifying the source and terms of any litigation funding Plaintiff may be receiving in this matter and related communications"); *Colibri Heart Valve LLC v. Medtronic CoreValve LLC*, No. 8:20-cv-00847-DOC (JDEx), 2021 WL 10425630, at *1, 4 (C.D. Cal. Mar. 26, 2021) (finding no relevance to discovery requests for all documents and communications "relating to the funding or financing of this Case by any third-party"); *United Access Techs., LLC v. AT&T Corp.*, No. CV 11-338-LPS, 2020 WL 3128269, at *1 (D. Del. June 12, 2020) (finding "litigation funding-related discovery" was not relevant); *Benitez v. Lopez*, No. 17-cv-3827, 2019 WL 1578167, at *1-2 (E.D.N.Y. Mar. 14, 2019) (holding litigation funding "is not relevant to a claim or defense in the case or credibility"); *MLC Intell. Prop., LLC v. Micron Tech., Inc.*, No. 14-CV-03657-SI, 2019 WL 118595, at *1 (N.D. Cal. Jan. 7, 2019) (denying discovery into "'persons and entities that have a financial interest in this litigation,' including an identification of any third party that is funding this litigation" as "not relevant"); *Hybrid Athletics, LLC v. Hylete, LLC*, No. 3:17-CV-1767 (VAB), 2019 WL 4127377, at *13 (D. Conn. Aug. 30, 2019) ("[T]he Court fails to see what meaningful purpose litigation financing or fee related discovery would reveal at this time that would be relevant or proportional to the claims in this case."); *MLC Intellectual Prop.*, 2019 WL 118595 at *2 (holding litigation financing was irrelevant and not discoverable); *Space Data Corp. v. Google LLC*, No. 16-cv-03260, 2018 WL 3054797, at *1 (N.D. Cal. June 11, 2018) (finding litigation funding irrelevant—"a side issue at best"); *Harper v. Everson*, No. 3:15-CV-00575-JHM, 2016 WL 8201785, at *6 (W.D. Ky. June 27, 2016) (denying discovery into "how the Plaintiffs are funding the cost of litigation and their attorneys' fees" as irrelevant); *Pipkin v. Acumen*, No. 1:18-cv-00113-HCN-PMW, 2019 U.S. Dist. LEXIS 206233, at *3 (D. Utah Nov. 26, 2019) (finding that "information related to funding of the litigation is irrelevant to the claims and defenses of the case"); *VHT, Inc. v. Zillow Group, Inc.*, No. C15-1096JLR, 2016 WL 7077235 (W.D. Wash. Sept. 8, 2016) (same).

mere fact that a party obtained litigation funding has no bearing on the claims and defenses in a case.  *See, e.g.*, *Yousefi v. Delta Electric Motors, Inc.*, No. 13-CV-1632 RSL, 2015 WL 11217257, at *2 (W.D. Wash. May 11, 2015) ("Whether plaintiff is funding this litigation through savings, insurance proceeds, a kickstarter campaign, or contributions from [a] union is not relevant to any claim or defense at issue.").  Indeed, Apple knows this full well, as a court in Western District of Texas recently rejected Apple's attempt to obtain discovery concerning its adversary's litigation funders.  *See Mullen Industries LLC v. Apple Inc.*, No. 6:22-cv-00145, Dkt. 64 (W.D. Texas Oct. 19, 2022) (Albright, J.) ("Apple's deposition notices are quashed to the extent they seek information regarding litigation funders and/or litigation investors.").

Courts have also rejected arguments that litigation funding materials are relevant in patent infringement cases specifically.  *See, e.g.*, *Trustees of Purdue Univ.*, 2023 WL 11917023, at *3 (denying motion to compel in patent infringement case from a litigation funding and litigation management company).  As one court explained, "[litigation funding agreements] are not patent licensing agreements and are not otherwise relevant to the hypothetical negotiation between the parties" that can be relevant to patent infringement damages, and "[t]he best that can be said about litigation funding agreements is that they are informed gambling on the outcome of litigation. They are so far removed from the hypothetical negotiation that they have no relevance."  *See, e.g.*, *AVM Techs., LLC v. Intel Corp.*, No. 15-33-RGA, 2017 WL 1787562, at *3 (D. Del. May 1, 2017); *see also Colibri*, 2021 WL 10425630, at *1, 4.

Here, as noted above, all of the discovery sought by the Subpoenas relates to the fact that SCLF is providing litigation funding to Haptic in the Haptic Action.[4]  Walia Decl., Exs. A, B, C.

---

[4] Each of the Subpoenas seek essentially the same categories of documents and testimony from each of the Siltstone Entities, with one exception for the Subpoenas to LFH which additionally seek one category of information related to the creation, founding, and funding of LFH.  *See, e.g.*, Walia Decl., Ex. C (LFH Subpoenas).

Given that the Siltstone Entities' *only* connection to the Haptic Action is that SCLF is providing litigation funding to Haptic (Walia Decl. ¶ 8), none of the litigation funding-related discovery Apple seeks is relevant to the claims and defenses in the Haptic Action.

None of Apple's arguments in support of the Subpoenas demonstrate "a compelling showing of a legitimate concern," *Trustees of Purdue Univ.*, 2023 WL 11917023, at *3, that would warrant discovery from the Siltstone Entities.  As noted above, Apple claims it is seeking discovery from the Siltstone Entities because it is allegedly relevant to Haptic's standing, the extent to which unnamed witnesses are biased or lack credibility, and patent infringement damages.  *See* p. 4-5 *supra*; *see also* Griffin Decl., Ex. A (2/17/25 email, at 6:56 PM).  The fundamental problem with Apple's arguments is that Apple has not—and cannot—articulate a specific, non-speculative reason why that type of discovery is necessary in this case.

Indeed, courts do not permit litigation funding discovery in patent cases based on mere speculation that the discovery *could* be relevant to a particular issue in the underlying lawsuit.  *See, e.g.*, *Colibri*, 2021 WL 10425630, at *4; *United Access Techs., LLC v. AT&T Corp.*, No. CV 11-338-LPS, 2020 WL 3128269, at *1 (D. Del. June 12, 2020).  As other courts have noted, "[r]equested information is not relevant to 'subject matter involved' in the pending action if the inquiry is based on the party's mere suspicion or speculation."  *United Access Techs., LLC*, 2020 WL 3128269, at *2 (citation omitted); *see also Colibri*, 2021 WL 10425630, at *4 (same); *MLC Intell. Prop., LLC v. Micron Tech., Inc.*, No. 14-CV-03657-SI, 2019 WL 118595, at *2 (N.D. Cal. Jan. 7, 2019) (requiring a "specific, articulated reason to suspect bias or conflicts of interest" to justify litigation-funding discovery on that ground); *VHT, Inc. v. Zillow Grp., Inc.*, Case No. C15-1096JLR, 2016 WL 7077235, at *1, 2 (W.D. Wash. Sept. 8, 2016) (explaining "[c]ourts will

compel discovery into funding sources only upon the presentation of 'some objective evidence' that the discovering party's 'theories of relevance are more than just theories'").

For example, in *Colibri*, the defendant argued that plaintiff's litigation funding documents (1) were relevant to the plaintiff's "standing" and "value of the allegedly infringed patents'"; (2) "could be used to refute any David vs. Goliath narrative at trial"; and (3) "may be relevant to central issues like validity and infringement, valuation, damages, royalty rates, pre-suit investigative diligence, and whether [the plaintiff] is an operating company." *Id.* at *3-4. The *Colibri* court rejected each of the defendant's arguments, explaining that "courts have declined to order production of litigation funding documents where, as in this instance, the moving party's justifications are based on speculation." *Id.* at *4. Similarly, in *United Access Technologies, LLC v. AT&T Corp.*, the court rejected the defendant's argument that "the litigation funding-related discovery it seeks" was "relevant to central issues like validity and infringement, valuation, damages, royalty rates, and whether plaintiff is an operating company" because the defendant "merely speculate[d]" that the reasons that made litigation-funding discovery potentially relevant in other cases "are also present here," and failed to articulate how the documents "are relevant to the specific claims or defenses of ***this*** case." 2020 WL 3128269, at *1.

That is exactly what Apple is attempting to do here. Specifically, Apple is pointing to relevance-based arguments that have been successful on the unique facts of particular cases, and incorrectly extrapolating from those cases a non-existent rule that parties are always permitted to obtain carte blanche discovery from their adversaries' third-party litigation funders. That is not true. *See* p. 10-11 *supra* (collecting cases). Indeed, as noted above, courts in the Fifth Circuit have "consistently denied motions to compel production of information related to litigation funding," *Lower48 IP LLC*, 2023 WL 11893431, at *2, and that "information about litigation funding is

largely irrelevant and thus beyond the scope of discovery absent a *compelling showing of a legitimate concern* (such as standing or conflicts of interest)." *Trustees of Purdue Univ.*, 2023 WL 11917023, at *3 (emphasis added).

Apple cannot make that "compelling showing" here. For example, Apple claims that its Subpoenas are appropriate because "[a]ny documents and communications that establish whether Haptic, Inc. is the de facto owner of the Asserted Patents is important to the case," and it is "entitled to investigate and understand whether Haptic, Inc., has proper standing to bring this suit and who/which entity has the ultimate authority over all litigation decisions in this case, especially in the event of a settlement." Griffin Decl. Ex. A (2/17/25 email at 6:56 PM). But Apple's entirely speculative concerns about Haptic's standing do not entitle Apple to the broad discovery that it seeks through the Subpoenas. Indeed, in situations where courts have permitted litigation funding discovery because of standing concerns, there was a legitimate question of whether the plaintiff no longer "held exclusionary rights to the asserted patent on the date [it] filed [their patent infringement] suit." *Colibri*, 2021 WL 10425630, at *2. Absent such concerns, courts have rejected attempts to obtain litigation funding information based on the types of standing arguments that Apple is making here. *See, e.g.*, *VHT*, 2016 WL 7077235, at *1; *GoTV Streaming, LLC v. Netflix, Inc.*, No. 2:22-cv-07556-RGK-SHK, 2023 WL 4237609, at *12 (C.D. Cal. May 24, 2023) (rejecting argument that litigation funding discovery was relevant to standing as "speculative").

In this case, Haptic's standing is not in dispute. Haptic has alleged in its Complaint that it is "the sole and exclusive owner of all rights, title, and interest to and in the '738 Patent and holds the exclusive right to take all actions necessary to enforce its rights to the '738 Patent." Walia Decl., Ex. D (Haptic Complaint) ¶ 2. Moreover, as explained in the Walia Declaration, the Siltstone Entities have no rights, title, or interest in the 738 Patent. Walia Decl. ¶ 9. Nor do the

15

Siltstone Entities have any ability to control or approve litigation and settlement decisions in the Haptic Action, which is fully controlled by Haptic. *Id.*

In *Colibri*, the court rejected the defendants' similar attempt to seek the plaintiff's "litigation financing documents" on standing grounds, finding that "Defendant offers no evidence or support suggesting that Plaintiff here lacks standing" and its theory of relevance was merely based on "some unknown chance that Plaintiff lacks standing." *Colibri*, 2021 WL 10425630, at *3; *see also VHT*, 2016 WL 7077235, at *1 (denying defendant litigation funding discovery into "any person other than [plaintiff] that may have an interest in any recovery" as irrelevant to "arguments that [plaintiff] may lack standing" and supported by "[n]othing more than speculation"). The same is true here, where Haptic has already asserted it is the *exclusive* owner of all rights, title, and interest in the '738 Patent, and the Siltstone Entities have further confirmed that they have no ownership interest in the '738 Patent. Under these circumstances, the discovery Apple seeks that purportedly relates to Haptic's standing is an irrelevant and improper fishing expedition.

Apple's contention that it is entitled to "discover and gauge the potential biases and prejudices of third-party witnesses who may appear at trial" because "it goes to credibility of the witnesses as well as the plaintiff" (Griffin Decl. Ex. A (2/17/25 email at 6:56 PM)) is no better. In *MLC Intell. Prop., LLC v. Micron Tech., Inc.*, the court rejected as "not relevant" the defendant's attempt to seek discovery of "'persons and entities that have a financial interest in this litigation,' including an identification of any third party that is funding this litigation" purportedly to "uncover possible bias issues." No. 14-CV-03657-SI, 2019 WL 118595, at *1 (N.D. Cal. Jan. 7, 2019). The court explained that the defendant's "assertions of potential bias and conflicts of interest are speculative," and further reasoned that courts have only found that "litigation funding agreements

could be discoverable when there was a specific, articulated reason to suspect bias or conflicts of interest." *Id.* at *2 (citing *Yousefi*, 2015 WL 11217257, at *2 (funding sources could be relevant where funder's personnel were witnesses); *Nelson v. Millennium Labs*, Case No. 2:12-cv-01301-SLG, 2013 WL 11687684, at *5-6 (D. Ariz. May 17, 2013) (plaintiff's fee agreement ordered produced where defendant asserted a market competitor was funding the litigation)).  The court also rejected the argument that litigation funding discovery was relevant to identifying "jury members who may have a bias," explaining that "the Court can question potential jurors *in camera* regarding relationships to third party funders and potential conflicts of interest."  *Id.*

The notion that there are any bias or credibility concerns arising out of the Siltstone Entities' relationship with Haptic is pure conjecture.  Here, as explained above, the non-party Siltstone Entities' only connection to the Haptic Action is that SCLF is providing funding for the litigation—they are not fact witnesses, they are not one of Apple's market competitors, and they do not have any personal knowledge of the underlying facts at issue.  Walia Decl. ¶¶ 8-9.  There is no reason to suspect that Haptic's use of litigation funding will present concerns relating to bias or conflicts of interest at trial (or otherwise in this case), and therefore, Apple cannot point to these hypothetical, unfounded concerns to open the door to broad discovery from the Siltstone Entities. *See Benitez v. Lopez*, No. 17-CV-3827-SJ-SJB, 2019 WL 1578167, at *1 (E.D.N.Y. Mar. 14, 2019) (holding that defendant's request for "litigation funding documents" was "irrelevant to credibility" and "motives" because it was based on "speculation").

The same is true for Apple's argument concerning damages.  In asserting that "[a]ny agreements and related documents that contain or reflect valuations of the asserted patents prior to the litigation … will inform the parties' assessment of damages in this litigation" (Griffin Decl. Ex. A (2/17/25 email at 6:56 PM)), Apple ignores that—as courts have held—discovery into a

party's litigation funding is generally not relevant to the "value of the allegedly infringed patents," "damages, [or] royalty rates" *unless* there is some concrete, non-speculative reason to believe the requested discovery is necessary on the particular facts of the case. *See Colibri*, 2021 WL 10425630, at *3-4. Indeed, as the Central District of California made clear in *Colibri*:

> To the extent Defendant contends *Continental Circuits LLC* and *Acceleration Bay LLC* stand for a general proposition that litigation funding agreements are *per se* relevant in patent infringement cases, **the Court disagrees that those cases from other district courts stand for such a bright line rule**. Courts decide on motions to compel further discovery responses on a case by case basis, considering the relevant circumstances in a particular case.

*Id.* at *4 (emphasis added); *see also United Access Techs.*, 2020 WL 3128269, at *1 ("[Defendant] merely speculates" that the reasons making "valuation, damages, royalty rates" relevant in other cases "are also present here"); *AVM Techs., LLC v. Intel Corp.*, 2017 WL 1787562, at *3 (testimony regarding "litigation funding agreements . . . have no relevance" to valuation and "would just invite a sideshow on the economics of patent litigation"). Put differently, the fact that a limited number of courts have permitted litigation-funding discovery into valuation issues in particular patent infringement cases does not mean that Apple can defend its Subpoenas based on nothing more than speculation that valuation documents are necessarily relevant and proportionate to the needs of this case, or that Apple can seek these documents directly from the Siltstone Entities rather than pursuing discovery from Haptic.

Finally, Apple's argument that it is "entitled to inquire into any documents or testimony between Haptic Inc. and any third party that provided any assessment of the merits of this case" (Griffin Decl. Ex. A (2/17/25 email at 6:56 PM)) should be rejected as well. If the Court were to accept this argument, it would effectively open the door to broad discovery from litigation funders generally, which is entirely inconsistent with the numerous cases holding that parties generally cannot obtain litigation-funding discovery because it is outside the scope of Rule 26(b)(1). *See* p.

18

10-11 *supra*. Indeed, litigation funders typically assess the merits of a case in determining whether to provide litigation finance to a plaintiff, and yet the reality is courts in the Fifth Circuit have "consistently denied motions to compel production of information related to litigation funding." *Lower48 IP LLC*, 2023 WL 11893431, at \*2. Moreover, even if this type of discovery were relevant (it is not), the discovery would necessarily be protected from disclosure by the attorney-client privilege and the work product doctrine. *See* p. 19-25 *infra*.

\* \* \*

Overall, Apple has not provided the Court with any legitimate argument that Apple is seeking relevant information from the Siltstone Entities through the Subpoenas that is proportional to the needs of the Haptic Action, never mind a "compelling showing of a legitimate concern" that would entitle Apple to discovery form a third-party litigation funder. *Trustees of Purdue Univ.*, 2023 WL 11917023, at \*3. The Court should quash the Subpoenas in their entirety because Apple is seeking litigation-funding documents and testimony that is not "relevant and proportional to the needs of the case[.]" *Stemmons Enter., L.L.C.*, 2023 WL 7545223, at \*2.

## III. APPLE IS SEEKING LITIGATION FUNDING DISCOVERY THAT IS PROTECTED BY THE WORK PRODUCT DOCTRINE AND ATTORNEY-CLIENT PRIVILEGE

Even if Apple could demonstrate that it is seeking discovery that is relevant to the claims and defenses in the Haptic Action (which it cannot do), the Court should quash the Subpoenas because they call for the production of a wide-array of documents and communications that are protected from disclosure under the work product doctrine and the attorney-client privilege.[5]

---

[5] During the meet and confer process, Apple asserted that the Siltstone Entities cannot claim that the Subpoenas are seeking information protected by the work product doctrine or the attorney-client privilege without first providing a privilege log. Griffin Decl., Ex. A (2/25/25 email at 12:00AM). That is not correct. Apple ignores that the Siltstone Entities have undue burden and relevance objections to the Subpoenas, and therefore, Apple's request for a privilege log is *itself* improper at this juncture. As a court in the District of Delaware previously held:

Under the work product doctrine, "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). As the Fifth Circuit has held, the work product protection applies "'as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation.'" *In re Kaiser Aluminum & Chem. Co.*, 214 F.3d 586, 593 (5th Cir. 2000) (quoting *United States v. El Paso Co.*, 682 F.2d 530, 542 (5th Cir.1982)). Work product materials are only discoverable if "(1) they are otherwise discoverable under Rule 26(b)(1); and (2) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(i)–(ii). Furthermore, the court "must protect against disclosure of the mental

---

Vick further asserts that the subpoenas are directed to documents and communications that are protected by the attorney-client privilege. Vick clearly has standing to assert the attorney-client privilege on behalf of both Aware and Plaintiff. Under the attorney-client privilege, "the giving of professional advice" by the lawyer to the client and "the giving of information to the lawyer to enable him to give sound and informed advice" are protected. *Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981). Defendants respond that Vick must provide a privilege log to claim the privilege. However, "[i]f a broad discovery request is made … and the responding party believes in good faith that the production of [the requested] documents … would be unduly burdensome, it should make its objection to the breadth of the request." Fed. R. Civ. P. 26(b)(5) Adv. Comm. Note to 1993 Ams. Vick has done so here. (D.I. 1). For the reasons stated above, the creation of a privilege log would itself be unduly burdensome here. Therefore, the lack of a privilege log will not defeat Mr. Vick's claim of attorney-client privilege.

*In re TQ Delta*, No. CV 17-MC-328-RGA, 2018 WL 5033756, at *3 (D. Del. Oct. 17, 2018); *see also, e.g.*, *Hall v. Baltimore Police Dep't*, No. 1:24-1137-RDB, 2025 WL 509130, at *11 (D. Md. Feb. 13, 2025) (collecting cases and explaining "a privilege log is not always a prerequisite," "[t]he proponent may satisfy this burden [to demonstrate a valid privilege claim] without a privilege log where the challenged request is, by its terms, overbroad or necessarily seeking privileged information," and "'a document-by-document privilege log is not always necessary when a party has, in good faith, asserted other non-privilege objections to the discoverability of a whole range of materials,'" and "[t]his careful approach furthers the Federal Rules' preference for streamlined discovery and avoidance of unnecessary costs" (citations omitted)); *Truong v. KPC Healthcare, Inc.*, No. 8:23-cv-01384-SB-BFM, 2024 WL 3496865, at *4 (C.D. Cal. July 17, 2024) (holding that a privilege log was not required when the defendants had "maintained their position that the documents responsive to the challenged RFPs were not otherwise discoverable," and citing cases for the proposition that "'[w]hen, as here, the responding party objects to the scope of discovery, a court may rule on the objections first before requiring a privilege log. If the court finds that the document is within the scope of the objection, and the court overrules the objection, it must then give the party an opportunity to list the document on a privilege log pursuant to Rule 26(b)(5).'").

impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B). And finally, it goes without saying that attorney-client privileged communications need not be produced. *See, e.g.*, *Homeland*, 643 F. Supp. 3d at 680; *Green v. Kroger Co.*, 2022 WL 1078024, at *2.

Here, the work product protection bars Apple's requests because (1) litigation funding information is clearly work product, and (2) there was no waiver of the work product protection. Apple is also seeking discovery that is protected under the attorney-client privilege. Moreover, the fact that the Subpoenas implicate these privilege issues—including those relating to both Haptic's privileges and the Siltstone Entities' privileges—is one of the many reasons Apple should litigate this discovery dispute in the first instance with Haptic in the underlying Haptic Action.

***First***, litigation funding documents are inherently tied to future litigation and therefore qualify for work product protection, as numerous courts—including those in the Fifth Circuit— have repeatedly held. *See, e.g.*, *Trustees of Purdue Univ. v. STMicroelectronics, Inc.*, No. 6:21-CV-00727-ADA, 2023 WL 11917023, at *2 (W.D. Tex. Jan. 18, 2023) (finding that documents and communications with a litigation funder were "protected under the work product doctrine"); *Hardin v. Samsung Elecs. Co.*, No. 2:21-CV-00290-JRG, 2022 WL 14976096, at *2–3 (E.D. Tex. Oct. 25, 2022) (finding documents analyzing patents allegedly prepared for purposes of seeking litigation funding were protected work product); *United States v. Ocwen Loan Servicing, LLC*, No. 4:12-CV-543, 2016 WL 1031157, at *6 (E.D. Tex. Mar. 15, 2016) ("The Court finds that the litigation funding information is protected by the work product doctrine."); *Mondis Tech., Ltd. v. LG Elecs., Inc.*, No. 2:07-CV-565-TJW-CE, 2011 WL 1714304, at *3 (E.D. Tex. May 4, 2011) (holding in patent infringement action that documents concerning plaintiff's "overall litigation and

licensing strategy" and "licensing and litigation revenues" were "protected by the work product protection").[6]

Other than public documents and those that are already available to Apple—such as a copy of the patent-in-suit, which is attached to Haptic's Complaint (*see* Walia Decl., Ex. D)—the documents and communications the Siltstone Entities possess within the scope of the Subpoenas related to Haptic, the 738 Patent, and the Haptic Action would all be (1) material prepared in anticipation of litigation, or (2) attorney-client privileged information.  Walia Decl. ¶ 7.  The Siltstone Entities only started communicating with Haptic and its counsel *after* Haptic was already anticipating litigation involving the 738 Patent.  *Id.* ¶ 4.  Indeed, all communications between the Siltstone Entities and Haptic and its counsel were solely related to Haptic's efforts to seek litigation funding for litigation involving the 738 Patent.  *Id.* ¶ 8.  Moreover, before engaging in any substantive discussions, Haptic and a Siltstone affiliate entered into a confidentiality agreement, which applies to all documents and information exchanged between the Siltstone Entities and Haptic and its counsel.  *Id.* ¶ 5.  Thus, any confidential documents and communications in the Siltstone Entities' possession related to Haptic, the 738 Patent, and the Haptic Action would necessarily be protected from disclosure under either the work product doctrine, the attorney client privilege, or both.  *Id.* ¶ 7; *see also Lambeth Magnetic Structures, LLC v. Seagate Tech. (US) Holdings, Inc.*, No. CV 16-538, 2018 WL 466045, at *5–6 (W.D. Pa. Jan. 18, 2018) (explaining work product protection applies to "communications with Plaintiff's agents and in anticipation of litigation").

---

[6] *See also Impact Engine, Inc. v. Google LLC*, No. 3:19-cv-01301-CAB-DEB, 2020 U.S. Dist. LEXIS 194517, at *2-3 (S.D. Cal. Oct. 20, 2020) ("[T]hese documents were created because of the litigation they will fund. . . . The work product protection is not waived because it was shared with another person or entity."); *Viamedia, Inc. v. Comcast Corp.*, No. 16-CV-5486, 2017 WL 2834535, at *3 (N.D. Ill. June 30, 2017) (denying motion to compel documents disclosed by plaintiff to "litigation funding firms" as work product "prepared in anticipation of litigation").

Apple is also not entitled to deposition testimony from the Siltstone Entities for the same reason. The only substantive testimony that the Siltstone Entities could hypothetically provide related to Haptic, the 738 Patent, and the Haptic Action would require the Siltstone Entities to disclose information is that is protected by the work product doctrine or the attorney-client privilege. Walia Decl. ¶¶ 7-8.

For example, as one court in the Southern District of California explained in quashing deposition subpoenas issued by Apple to a plaintiff's litigation funders in another case, "although underlying facts are not protected by the work product doctrine, Defendant seeks testimony that would require divulging mental impressions or the strategy underlying work product, which itself would be privileged." *Taction Tech.*, 2023 WL 4611826, at *6. Indeed, the subpoenas served by Apple in *Taction* sought testimony on substantially the same categories of litigation funding information as the Subpoenas here. *See id.* (denying depositions regarding "[f]inancial analyses, projections, estimates or valuations of Taction, the Taction Products, the Patents-in-Suit, any Related Patents, and/or any patent infringement lawsuit involving Apple, Inc. and/or the Lawsuit."). The *Taction* court further found that to the extent the litigation funders could provide testimony concerning unprotected facts, such testimony "would hold limited value" or be "duplicative of that which is available from Plaintiff," rending the subpoenas "unduly burdensome." *Id.* at *6-7.

So too here, where the Subpoenas seek testimony that would necessarily require divulging mental impressions, the strategy underlying the Haptic Action, or other information protected from discovery by the work product doctrine or the attorney-client privilege. *See also Thimes Sols., Inc. v. TP-Link USA Corp.*, No. CV 19-10374-SB(EX), 2022 WL 18397128, at *1 (C.D. Cal. Oct. 6, 2022) (denying motion to compel production of communications with "litigation funders" as

23

"protected by the work product doctrine"); *Lambeth*, 2018 WL 466045, at *5-6 (holding that communications and agreements with litigation-funding organizations were in anticipation of litigation and were thus "shielded under work product protection").

**Second**, Apple cannot credibly argue that Haptic waived its work product protection by disclosing documents or other information to the Siltstone Entities because—as explained in the Walia Declaration— they were provided under a confidentiality agreement.  Walia Decl. ¶ 5.  It is well-settled that "disclosure of work-product waives the work product protection only if work-product is given to adversaries or treated in a manner tha[t] substantially increases the likelihood that an adversary will come into possession of the material."  *Mondis Tech., Ltd.*, 2011 WL 1714304, at *2 (citations omitted).  As numerous courts have held, this is not the case where work product is exchanged pursuant to a confidentiality agreement.  *See Ocwen*, 2016 WL 1031157, at *6 ("[A]lthough the documents were disclosed to third parties, the disclosures did not constitute a waiver because they were disclosed subject to non-disclosure agreements…"); *Hardin*, 2022 WL 14976096, at *2 (holding "Plaintiffs did not waive the work product protection" where documents were disclosed to litigation funders "pursuant to NDAs"); *Mondis Tech., Ltd.*, 2011 WL 1714304, at *3 (holding "although these documents [regarding litigation funding] were disclosed to third parties, the disclosures do not create a waiver because they were disclosed subject to [nondisclosure] agreements").[7]

In sum, the only documents and testimony the Siltstone Entities could provide that are responsive to the Subpoenas are privileged, and Apple cannot show any waiver or exception applies.

---

[7] Moreover, even absent an express confidentiality agreement, "[l]itigation funders have an inherent interest in maintaining the confidentiality of potential clients' information, therefore, [a plaintiff] had an expectation that the information disclosed to the litigation funders would be treated as confidential."  *Id.*

## **CONCLUSION**

For the foregoing reasons, the Siltstone Entities respectfully request that the Court quash

the Subpoenas.

Dated: New York, New York          SCHULTE ROTH & ZABEL LLP
        February 24, 2025

                                         By:   */s/ Robert E. Griffin*
                                               Robert E. Griffin
                                               **Attorney-in-Charge**
                                               Southern District of Texas Bar No. 3908408
                                               New York Bar No. 5048335
                                               George H. Rowe (*pro hac vice forthcoming*)
                                               New York Bar No. 5513486
                                               919 Third Avenue
                                               New York, New York  10022
                                               Tel: (212) 756-2000
                                               Fax: (212) 593-5955
                                               robert.griffin@srz.com
                                               george.rowe@srz.com

                                               *Attorneys for Siltstone Capital LLC,*
                                               *Siltstone Capital Litigation Fund, LP, and*
                                               *LF Haptic, LLC*

## CERTIFICATE OF CONFERENCE

The undersigned counsel conferred with counsel for Apple regarding the merits of this motion via video call on February 14, 2025 and February 19, 2025 and by email.  On February 22, 2025, counsel for Apple indicated that Apple opposed this motion.  Therefore, the parties are at an impasse and are unable to agree about the disposition of this motion.


_/s/ Robert E. Griffin_
Robert E. Griffin


## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on February 24, 2025, a true and correct copy of the foregoing Motion to Quash Apple Inc.'s Subpoenas to Produce Documents and Testify at a Deposition and all papers filed in support thereof was served on all parties through their counsel of record via Federal Express and email to:

Joy B. Kete
kete@fr.com
Fish & Richardson P.C.
12860 El Camino Real Suite 400
San Diego, CA 92130

**ATTORNEYS FOR DEFENDANT APPLE INC.**

Rocco Magni
rmagni@susmangodfrey.com
Susman Godfrey LLP
1000 Louisiana Street
Suite 5100
Houston, TX 77002

**ATTORNEYS FOR PLAINTIFF HAPTIC, INC.**


_/s/ Robert E. Griffin_
Robert E. Griffin