1
2
3
4                      UNITED STATES DISTRICT COURT
5                    NORTHERN DISTRICT OF CALIFORNIA
6
7    HAPTIC, INC.,                          Case Nos.  24-cv-02296
8                      Plaintiff,                     25-mc-80114
9          v.
                                            **ORDER RE: APPLE'S MOTION TO**
10   APPLE, INC.,                           **COMPEL COMMUNICATIONS AND**
                                            **AGREEMENTS WITH THIRD**
11                    Defendant.            **PARTIES; AND JOINT MOTION TO**
                                            **QUASH SUBPOENAS**
12   HAPTIC, INC., *et al*.,                Re: Dkt. No. 164 (24-cv-02296); &
13                    Plaintiffs,               Dkt. No.  1 (25-mc-80114)
14         v.
15   APPLE, INC.,
16                    Defendant.
17

18        Haptic, Inc. ("Haptic") sues Apple, Inc. ("Apple") for infringement of its U.S. Patent No.

19   9,996,738 ("the '738 patent").  In engaging counsel for litigation, Haptic has enlisted a litigation

20   funder.  Apple now moves for an order compelling Haptic to produce all relevant documents

21   relating to litigation funding.  (Dkt. No. 164.)[1]  Having carefully reviewed the parties' briefing and

22   with the benefit of oral argument on June 3, 2025, the Court DENIES Apple's motion to compel.

23                                  **BACKGROUND**

24   **I.      Litigation Funding Background**

25        Prior to filing suit against Apple, Haptic retained Susman Godfrey as counsel.  (Dkt. No.

26   170-2 ¶ 6.)  As part of its work in "[a]dvising Haptic in its plans to pursue litigation against Apple,

27   ─────────────────

28   [1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the
     ECF-generated page numbers at the top of the documents.

United States District Court
Northern District of California

… Susman Godfrey engaged a third-party firm and oversaw its creation of a report identifying the state of the art prior to the Asserted Patent." (*Id.* ¶ 7.) Haptic's counsel also "engaged and collaborated with an expert to prepare an analysis of Haptic's potential damages in anticipated litigation." (*Id.*)

In early 2022, Haptic communicated with "several litigation-funding entities." (*Id.* ¶ 8.) Prior to sharing "substantive information about its anticipated claims," Haptic entered into confidentiality or nondisclosure agreements where potential funders agreed "not to disclose" information about its potential litigation. (*Id.* ¶ 10-16.) "Haptic did not provide to any litigation funder, or receive from any litigation funder, a valuation of the Asserted Patent." (*Id.* ¶ 17.)

Though Haptic communicated with a number of potential funders, it eventually entered an agreement with Siltstone Capital Litigation Fund, LP (the "Funder"). (*Id.* ¶ 8.) The Funder "is lending capital to Haptic for litigation costs in connection with this litigation," but "has no present or future ownership interest in Haptic or the Asserted Patent," and "has no authority to control this litigation or settlement decisions." (*Id.* ¶¶ 19-21; *see also Haptic v. Apple*, No. 25-mc-80114-JSC (N.D. Cal.) (Dkt. No. 1-1 ¶ 9 ("None of the Siltstone Entities have any ownership interest, rights, title, or other interest in the 738 Patent and are not parties to the Haptic Action. None of the Siltstone Entities' approval is required for any litigation or settlement decision in the Haptic Action or with respect to the 738 Patent, nor do any of the Siltstone Entities have authority to make litigation or settlement decisions regarding the same.")).)

## II.    Procedural Background

Apple now seeks discovery into all documents and communications between Haptic and any litigation funders. On February 19, the parties indicated in their joint case management statement they were meeting and conferring regarding this issue. (Dkt. No. 141.) At the same time, Apple served subpoenas on Haptic and the Funder to obtain the same information it sought from Haptic. (Dkt. No. 164 at 9 n.1.) On February 24, 2025, Haptic and the Funder jointly sought to quash Apple's subpoena in federal court in the Southern District of Texas. *Haptic v. Apple*, No. 25-mc-80114-JSC (Dkt. No. 1.) The parties briefed the motion to quash and also briefed Apple's motion to transfer the quashal action to this Court. *Id.* (Dkt. No. 5.) On April 10, 2025, the Texas

United States District Court
Northern District of California

United States District Court
Northern District of California

court granted Apple's motion to transfer to this Court, *id.* (Dkt. No. 19); the matter was then related to this one.  On March 13, 2025, Apple filed a unilateral discovery dispute letter which was subsequently stricken for failure to comply with the Court's civil standing order regarding discovery disputes.  (Dkt. Nos. 150, 152.)  Soon thereafter, the parties filed a joint discovery dispute letter seeking the Court's guidance on the production of these documents.  (Dkt. No. 154.)

On April 2, 2025, the Court held an informal discovery conference about this dispute.  (Dkt. No. 164-5.)  At the conference, the Court indicated Haptic must prepare a privilege log for documents between Haptic and the Funder regarding either "valuation of the patent" or "evaluation of the patent."  (*Id.* at 19-20.)  The Court did not rule on whether the documents were relevant or privileged.  (*Id.*)  Pursuant to the Court's instructions, Haptic served a privilege log with 16 entries, claiming "Work Product; Common-Interest Privilege" for all entries.  (Dkt. No. 163-2.)  Apple then moved to compel all litigation funding communications and documents, including documents not described in the log.  (Dkt. No. 164.)

Apple seeks to obtain documents relating to (1) the '738 patent's valuation, validity, and potential infringement; (2) whether any party has an interest in the outcome of the litigation; and (3) dealings between Haptic and the Funder and potential funders.  (Dkt. Nos. 164-2, 164-3.)[2]

## ANALYSIS

### I.    Relevance

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26.  Information is relevant if "it has a tendency to make a fact more or less probable than it would be" otherwise.  Fed. R. Evid. 401.

### a.   Logged Documents Relevance

Apple claims the logged documents are relevant because (1) valuation documents inform or dispute damages numbers; and (2) evaluation documents "bear directly on the issues that the

---

[2] The Court ordered on April 2, 2025 that Haptic first log only valuation and evaluation documents.  (Dkt. No. 164-5.)  Even so, Apple seeks all litigation funding documents whether logged or not.

jury must decide here, [and] they are also relevant to assessing witness credibility at trial." (Dkt. No. 164 at 12-14.) Further, Apple seeks discovery into litigation funding to rebut potential trial themes it expects Haptic to make—namely the so-called "David v. Goliath" story—and to target witness credibility. (*Id.* at 24.) Finally, Apple contends the litigation funding agreement(s) would be relevant to whether Haptic has standing to sue.

### i. Valuation Documents

"Valuation" is a slight misnomer here, because, as Haptic contends and Apple does not contest, Haptic has not logged any documents that speak to the value of the patent in itself. Instead, the documents Apple seeks—and which Haptic logged—are so-called "damages analysis" reports shared by Mr. Boshernitzan (Haptic's CEO) with the Funder. (Dkt. No. 170-8 at 4 (privilege log nos. 14-16).) The log indicates three email attachments from January 2023, prior to the institution of this action, where Haptic shared "damages analys[es] prepared by and at the direction of counsel in anticipation of litigation." (*Id.*) Mr. Boshernitzan attests "Haptic's counsel also engaged and collaborated with an expert to prepare an analysis of Haptic's potential damages in anticipated litigation," though Haptic does not intend to use these reports at trial. (Dkt. No. 170-2 ¶ 7.) And at the April 2, 2025 informal discovery hearing, Haptic's counsel stated, "We did not do some independent valuation of the patent itself. … What Apple wants is our damages model, preliminary sketches of our damages model that we would have provided to a funder." (Dkt. No. 164-5 at 7.) And in its brief, Haptic further details the documents "reflect what Haptic's counsel and a non-testifying expert estimated Haptic could recover in anticipated litigation against Apple," (Dkt. No. 170 at 16), which it also characterizes as "its counsel's royalty analysis based on Apple's usage, even though that analysis does not assess the value or validity of the Asserted Patent itself." (*Id.* at 11.) So, the Court considers whether these shared pre-litigation royalty base analyses are relevant under Federal Rule of Civil Procedure 26.

In patent infringement cases, "[u]pon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer." 35 U.S.C. § 284. The "predominant measure of damages in patent infringement cases" is a reasonably royalty, which "is

1    often determined on the basis of a hypothetical negotiation, occurring between the parties at the

2    time that infringement began." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1312 (Fed.

3    Cir. 2011) (citations omitted). In reasonable royalty analyses, courts are guided by the *Georgia-*

4    *Pacific* factors which inform damages analyses in patent cases. *See Georgia-Pacific Corp. v. U.S.*

5    *Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y.1970); *see also Uniloc USA, Inc. v. Microsoft Corp.*,

6    632 F.3d 1292, 1317 (Fed. Cir. 2011) (holding the Federal Circuit "has sanctioned the use of the

7    *Georgia-Pacific* factors to frame the reasonable royalty inquiry."). A determination of whether

8    the underlying documents are relevant to damages calculations will therefore necessarily center on

9    whether they inform a hypothetical negotiation at the time of infringement, in other words,

10   whether they are relevant to any *Georgia-Pacific* factor. *See AVM Techs., LLC v. Intel Corp.*, No.

11   15-cv-00033-RGA, 2017 WL 1787562, at *3 (D. Del. May 1, 2017) (denying discovery into

12   litigation funding documents because they "are not otherwise relevant to the hypothetical

13   negotiation between the parties").

14         Apple argues the royalty base documents are relevant to Factors 14 and 15. At the April 2,

15   2025 hearing, Apple noted the valuation documents would be relevant to "Factor 15 … because

16   the damages expert is trying to determine what they would be willing to pay at the hypothetical

17   negotiation, and [Haptic's] view of what the patent is worth would inform what they are willing to

18   pay at the hypothetical negotiation." (Dkt. No. 164-5 at 10.) And in its Reply, Apple added the

19   valuation documents would be relevant to Factor 14. (Dkt. No. 171 at 7.) The fifteenth factor is

20   "[t]he amount that a licensor (such as the patentee) and a licensee (such as the infringer) would

21   have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily

22   trying to reach an agreement." *MLC Intell. Prop., LLC v. Micron Tech., Inc.*, 10 F.4th 1358, 1365

23   (Fed. Cir. 2021) (quoting *Georgia-Pacific*, 318 F. Supp. at 1120). And Factor 14 is "the opinion

24   testimony of qualified experts." *Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 27 n.11

25   (Fed. Cir. 2012) (quoting *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 853 n.3 (Fed. Cir.

26   2010), *aff'd*, 564 U.S. 91 (2011)).

27         The shared royalty base analyses are relevant to both *Georgia-Pacific* factors. The

28   analyses Haptic shared with the Funder are the same analyses parties use in determining damages

1    in infringement cases—reasonable royalty bases.  *See Uniloc USA, Inc.*, 632 F.3d at 1312.  In

2    other words, such a damages analysis would likely indicate the amount the licensor here "would

3    have agreed upon (at the time the infringement began)" because it is a closer-in-time analysis of

4    what Haptic believes was reasonable.  *MLC Intell. Prop., LLC*, 10 F.4th at 1365 (quoting *Georgia-*

5    *Pacific*, 318 F. Supp. at 1120).  What is more, these analyses were made with an expert, so they

6    may also be relevant to Factor 14.  (Dkt. No. 170-2 ¶ 6.)

7            Haptic's cited cases are inapposite.  While some courts have held, for instance, that

8    litigation funding agreements are "informed gambling on the outcome of litigation," none of the

9    cases cited considered whether reasonable royalty bases shared with a third party are relevant to

10   damages in a patent case.  *AVM Techs., LLC v. Intel Corp.*, No. 15-cv-00033-RGA, 2017 WL

11   1787562, at *3 (D. Del. May 1, 2017) (holding the agreements themselves were irrelevant to

12   damages); *see also GoTV Streaming, LLC v. Netflix, Inc.*, No. 22-cv-07556-RGK-SHK, 2023 WL

13   4237609, at *13 (C.D. Cal. May 24, 2023) (holding "any *valuation for litigation funding* has no

14   'more than a vague relationship (if that) with actual damages in patent litigation'").  Further, that

15   the damages calculations do not have a "valuation of the Asserted Patent," (Dkt. No. 170 at 15),

16   does not make these documents irrelevant where the documents include reasonable royalty base

17   calculations, as described above.  And that the reasonable royalty bases were prepared in 2022 or

18   2023 also does not make the documents irrelevant because Haptic claims infringement since at

19   least 2020, and potentially longer.  (Dkt. No. 1 ¶ 42.)  This is supported by Haptic's argument

20   about these documents: "they reflect what Haptic's counsel and a non-testifying expert estimated

21   Haptic could recover in anticipated litigation against Apple."  (Dkt. No. 170 at 16.)

22           As such, these damages-related documents are relevant.[3]

23                          **ii.  Evaluation Documents**

24           Next, Haptic's privilege log records a number of documents described as reports

25

26   _____

27   [3] Apple also seeks the funding agreement itself, arguing this too informs damages.  The Court is
     unpersuaded because unlike the damages analysis documents which are relevant to the damages at
     issue, the funding agreement's valuation of the litigation itself is merely "informed gambling on
28   the outcome of litigation" and has little relation to a hypothetical negotiation or reasonable royalty
     base.  *AVM Techs., LLC*, 2017 WL 1787562, at *3.

United States District Court
Northern District of California

1    "analyzing the validity of the Asserted Patent," "merits analysis," "merits of anticipated

2    litigation," reports "analyzing the validity of the Asserted Patent," and references for those merits

3    analyses.  (Dkt. No. 170-8.)

4        Documents shared with third parties containing "infringement or validity analys[es]" (Dkt.

5    No. 170 at 17), are relevant because they are relevant to Haptic's infringement claims and Apple's

6    invalidity defenses.  Fed. R. Civ. Proc. 26.  Indeed, these documents were sent by Mr.

7    Boshernitzan or Haptic's counsel, and speak to Haptic's own impressions about the strength—and

8    potentially weaknesses—of its claims.  (Dkt. No. 170-8.)

9        Haptic's arguments that these documents are only speculatively relevant and are irrelevant

10   to witness credibility are unavailing.  First, an infringement or validity analysis by Haptic's

11   counsel is not speculatively relevant.  Such documents would speak directly to Haptic's

12   impressions on the strengths of its claims.  Further, insofar as Mr. Boshernitzan makes statements

13   as to these documents or the infringement/validity claims, these documents would certainly be

14   relevant to either bolster or contradict his testimony about Apple's infringement or the '738

15   patent's validity.

16       Haptic's logged evaluation documents are thus also relevant.

17                    **iii.  Standing**

18       Apple also argues the agreement with the Funder (and related documents) are relevant to

19   whether Haptic has standing to sue because the agreement could reveal it lacks "the entire bundle

20   of sticks" for the '738 patent.  (Dkt. No. 164 at 26.)  In particular, Apple contends the agreement

21   might have granted the Funder some present or future ownership interest in the patent, so that

22   Haptic would not have "all legal rights to the patent as the patentee or assignee of all patent

23   rights."  *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1339-40 (Fed. Cir. 2007).

24       Apple has not shown the agreement is relevant to Haptic's standing.  Both Haptic and the

25   Funder separately attest the agreement does not grant or vest any present or future interest in the

26   patent to the Funder.  (Dkt. No. 170-2 ¶¶ 19-21; *see Haptic v. Apple*, No. 25-mc-80114 (N.D. Cal.)

27   (Dkt. No. 1-1 ¶ 9).)  And both Haptic and the Funder also attest the Funder has no say in the

28   ultimate resolution of the case.  (*Id.*)  Apple has not shown or even argued why Haptic and the

United States District Court
Northern District of California

1    Funder's testimony is not dispositive.

2        Apple cites *Uniloc*, where the court held the plaintiffs lacked standing to sue for patent

3    infringement because they defaulted on their loan from their litigation funder under an agreement

4    which granted the funder a royalty-free license upon default. *Uniloc USA, Inc. v. Apple, Inc.*, No.

5    18-cv-00358-WHA, 2020 WL 7122617, at *6-7 (N.D. Cal. Dec. 4, 2020). As the court explained,

6    "a party 'derives its standing from the exclusionary rights it holds,' and 'its standing will

7    ordinarily be coterminous with those rights.'" *Id.* at *7 (quoting *WiAV Sols. LLC v. Motorola,*

8    *Inc.*, 631 F.3d 1257, 1266 (Fed. Cir. 2010)). And because the funder there "held an unfettered

9    right in its 'sole and absolute discretion' to license the '203 patent to the world," the plaintiffs

10   therefore lacked exclusionary rights and likewise lacked standing to sue. *Id.* By contrast, here,

11   Haptic asserts no such agreement exists between it and the Funder. And Apple's arguments that

12   there are "concerns about Haptic's future standing" and "Apple should be entitled to know who

13   the real decision-makers are in this case" (Dkt. No. 164 at 26-27) are "based solely on [Apple's]

14   suspicion," which is insufficient to support discovery into this subject matter. *Drone Techs., Inc.*

15   *v. Parrot S.A.*, 838 F.3d 1283, 1300 (Fed. Cir. 2016).

16       So, Haptic's agreement with the Funder is not relevant.

17       **b. Non-Logged Documents**

18       Finally, Apple seeks all other non-logged, litigation-funding documents to (1) rebut a

19   "David v. Goliath" theme at trial, and (2) rebut witness testimony. Apple requests three groups of

20   documents:

21       • Documents relating to two conversations between the Funder and Haptic, one when

22         Haptic reached out to inquire about funding for litigation and the other when the

23         parties signed a Non-Disclosure Agreement (NDA) before discussing the substance

24         of litigation. *Haptic v. Apple*, No. 25-mc-80114 (N.D. Cal.) (Dkt. No. 1-1 ¶ 4-5).

25       • Communications surrounding the parties' NDA(s).

26       • Communications about the Funder's ultimate decision to fund litigation.

27   Apple fails to demonstrate these documents are relevant.

28       The cases Apple cites to support its assertion litigation funding materials are relevant to

United States District Court
Northern District of California

rebut trial themes fail to persuade.  (Dkt. No. 164 at 25; Dkt. No. 171 at 17.)  In *Continental Circuits*, the court conducted little analysis as to relevancy, but held the funding agreement and other documents "concern Plaintiff's financial resources and could be used to refute any David vs. Goliath narrative at trial." *Cont'l Cirs. LLC v. Intel Corp.*, 435 F. Supp. 3d 1014, 1019 (D. Ariz. 2020).  But unlike the defendant there, Apple knows the identity of the litigation funder here, knows the agreement functions as a loan and provides no ownership stake to the Funder, and even knows details about when Haptic sought funding.  (Dkt. No. 170-2 ¶¶ 19-21; *see also Haptic v. Apple*, No. 25-mc-80114 (N.D. Cal.) (Dkt. No. 1-1 ¶ 9).)  Meanwhile, in *Daimler*, the court allowed limited discovery into litigation funding because the plaintiff admitted the funder had a security interest in the patent, but the court nonetheless restricted discovery "regarding the relationship between [the funder] and other similarly named entities or [the funder's] other business interests." *Electrolysis Prevention Sols. LLC v. Daimler Truck N. Am. LLC*, No. 21-cv-00171-RJC-WCM, 2023 WL 4750822, at *8 (W.D.N.C. July 24, 2023).  Here, the Funder has no ownership stake in the '738 patent.  (Dkt. No. 170-2 ¶¶ 19-21; *see also Haptic v. Apple*, No. 25-mc-80114 (N.D. Cal.) (Dkt. No. 1-1 ¶ 9).)  Additionally, neither case permitted broad discovery into *potential* funders.  "[N]ow that [Apple] has the name of the funder, it has the necessary information to refute any such argument." *GoTV Streaming, LLC*, 2023 WL 4237609, at *13.

Second, Apple does not show how these documents are relevant to dispute witness credibility, namely, Mr. Boshernitzan's credibility.  Apple's arguments about credibility are limited to valuation and evaluation documents and do not reach the other categories of documents it now seeks to compel.

Therefore the non-logged documents are not relevant and are thus not discoverable.

### c.  Additional Documents Sought from the Funder

Finally, Apple seeks from the Funder, in a nutshell, "discovery about the Asserted Patent, Siltstone's relationship and communications with Haptic, and the extent of Siltstone's relevant financial interest." *Haptic v. Apple*, 25-mc-80114-JSC (Dkt. No. 6 at 6).  While this request significantly overlaps with the discovery Apple seeks from Haptic, the subpoena also seeks documents created by the Funder.  *Id.* at 13.  Apple offers an example: "[the Funder] likely

performed its own analyses, including of the patent and as to the value of the expected return, and such documents created by [the Funder] may be uniquely in [its] possession." *Id.* But Apple fails to show how such documents, to the extent they exist, are more relevant than any other third-party's analyses of the patent. Unlike Haptic's valuation and evaluation of *its own patent* at suit, the Funder's same valuations and evaluations are "so far removed from the hypothetical negotiation that they have no relevance." *AVM Techs., LLC*, 2017 WL 1787562, at *3. And Apple's assertions that other relevant documents likely exist are merely speculative and so do not support further discovery into the Funder. *See Colibri Heart Valve LLC v. Medtronic CoreValve LLC*, 8:20-cv-00847-DOC (JDEx), 2021 WL 10425630, at *4 (C.D. Cal. Mar. 26, 2021) ("Importantly, courts have declined to order production of litigation funding documents where, as in this instance, the moving party's justifications are based on speculation.") (collecting cases).

*    *    *

So, documents relating to Haptic's evaluation of the patent, as well as damages royalty rates, are relevant both to the claims and defenses in this matter as well as potential damages. The other documents Apple seeks are not relevant and therefore not discoverable.

## II.    Work-Product Privilege

"The work product doctrine protects from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation." *United States v. Richey*, 632 F.3d 559, 567 (9th Cir. 2011). "To qualify for work-product protection, documents must: (1) be 'prepared in anticipation of litigation or for trial' and (2) be prepared 'by or for another party or by or for that other party's representative.'" *In re Grand Jury Subpoena (Mark Torf/Torf Env't Mgmt*, 357 F.3d 900, 907 (9th Cir. 2004). "The doctrine protects both 'material prepared by agents for the attorney as well as those prepared by the attorney himself,' and its primary purpose is to 'prevent exploitation of a party's efforts in preparing for litigation.'" *Entangled Media, LLC v. Dropbox Inc.*, No. 23-cv-03264-PCP (VKD), 2025 WL 1069896, at *2 (N.D. Cal. Apr. 8, 2025) (quoting *United States v. Sanmina Corp.*, 968 F.3d 1107, 1119 (9th Cir. 2020); and *Admiral Ins. Co. v. U.S. Dist. Ct.*, 881 F.2d 1486, 1494 (9th Cir. 1989)). The party resisting production of material based on the work-product privilege bears the burden of proving that the privilege

United States District Court
Northern District of California

1    applies. *See Hernandez v. Tanninen*, 604 F.3d 1095, 1102 (9th Cir. 2010).

2          **a.  Prima-facie Showing of Privilege**

3          Having found the valuation and evaluation documents are relevant, the Court considers

4    whether the work-product doctrine protects these documents from production.  As a preliminary

5    matter, Haptic makes a prima facie showing that, absent waiver, the documents on its privilege log

6    are protected as attorney-work product.  Haptic's log provides adequate explanations for what

7    each withheld document contains, who created it, who sent it, who received it, and the date of

8    sending.  (*See generally* Dkt. No. 170-8.)  Haptic further provides a supporting declaration from

9    its CEO who attests that Haptic's attorneys or their agents prepared these documents in

10   anticipation of litigation.  (Dkt. No. 170-2.)

11         Apple's contention that the documents were prepared with a business rather than litigation

12   purpose is unpersuasive.  First, Haptic's CEO attests:

13               Advising Haptic in its plans to pursue litigation against Apple,
             Haptic's counsel thoroughly investigated Haptic's anticipated claims
14           of patent infringement against Apple, assessing the merits and
             potential damages. As part of that evaluation, Susman Godfrey
15           engaged a third-party firm and oversaw its creation of a report
             identifying the state of the art prior to the Asserted Patent. Haptic's
16           counsel also engaged and collaborated with an expert to prepare an
             analysis of Haptic's potential damages in anticipated litigation.
17

18   (Dkt. No. 170-2 ¶ 7.)  Although these documents were likely created to assist with obtaining

19   litigation funding, "[t]hese internal discussions leave a revealing trail of mental impressions, legal

20   theories, and strategic notes—all created as confidential internal documents or sent under

21   nondisclosure agreements, and so written with vulnerable candor."  *Design with Friends, Inc. v.*

22   *Target Corp.*, No. 21-cv-01376-SB, 2024 WL 4333114, at *3 (D. Del. Sept. 27, 2024) (citing

23   *Carlyle Inv. Mgmt. LLC v. Moonmouth Co. SA*, No. 7841, 2015 WL 778846, at *9 (Del. Ch. Feb.

24   24, 2015)).  As the Ninth Circuit explains,

25               [its] "because of" standard does not consider whether litigation was a
             primary or secondary motive behind the creation of a document.
26           Rather, it considers the totality of the circumstances and affords
             protection when it can fairly be said that the document was created
27           because of anticipated litigation, and would not have been created in
             substantially similar form but for the prospect of that litigation.

28   *In re Grand Jury Subpoena*, 357 F.3d at 908 (cleaned up).  The documents, as described in

1    Haptic's privilege log and as attested to by its CEO, were created because of anticipated litigation.

2        Apple's reliance on *Acceleration Bay LLC v. Activision Blizzard, Inc*., No. 16-cv-00453-

3    RGA, 2018 WL 798731, at *2 (D. Del. Feb. 9, 2018), is misplaced.  The Third Circuit, unlike the

4    Ninth, applies a "primary purpose" test to the work-product privilege.  *Id.* at *1.  This Court is

5    bound by Ninth Circuit law.  Applying that law, the logged documents would not have been

6    created but for the prospect of this litigation.

7        So, Haptic has met its burden of showing its communications are, absent waiver, protected

8    from disclosure by the work-product doctrine.

9        **b.  Waiver**

10       "The privilege derived from the work-product doctrine is not absolute. Like other qualified

11   privileges, it may be waived."  *United States v. Nobles*, 422 U.S. 225, 239 (1975).  "An express or

12   voluntary disclosure of work product waives the protection where such disclosure is made to an

13   adversary in litigation or where the disclosure is made in a manner that substantially increases the

14   opportunities for potential adversaries to obtain the work product."  *Entangled Media*, 2025 WL

15   1069896, at *2. (citing *Sanmina*, 968 F.3d at 1121; 8 Charles Alan Wright & Arthur R. Miller,

16   *Federal Practice & Procedure* § 2024 (3d ed. 2020); *Nidec Corp. v. Victor Co. of Japan*, 249

17   F.R.D. 575, 578 (N.D. Cal. 2007)).  And whether a party waived the privilege is a "fact-intensive

18   analysis requir[ing] a consideration of the totality of the circumstances and is ultimately guided by

19   the [] principle of fundamental fairness."  *Sanmina*, 968 F.3d at 1122.  So, a Court "may find the

20   work-product immunity waived where the disclosing party's conduct has reached a 'certain point

21   of disclosure' towards his adversary such that 'fairness requires that his privilege shall cease,

22   whether he intended that result or not.'"  *Id.* (quoting *Weil v. Investment/Indicators, Rsch. &

23   Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981)).

24       Apple argues Haptic waived its work-product privilege over documents shared with the

25   Funder by sharing those documents.  Haptic counters it shares a common legal interest with the

26   Funder, so the documents remain privileged despite being shared with a third party.  Since there is

27   no dispute Haptic shared documents it claims are privileged with the third-party funders, the Court

28   must determine whether the common interest doctrine shields Haptic from waiving its claimed

United States District Court
Northern District of California

12

privilege.  And, if the common interest doctrine does not shield Haptic from waiver, the Court must then consider whether Haptic's conduct nonetheless constitutes waiver of the privilege.

### i.  Common Interest Doctrine

The common interest/joint defense doctrine does not make a document or communication privileged; rather, it is a doctrine that prevents waiver of a pre-existing privilege if the privileged information is shared only with those with a common legal interest.  Thus, it "is not technically a privilege in and of itself but instead constitutes an exception to the rule on waiver where communications are disclosed to third parties."  *Holmes v. Collection Bureau of Am., Ltd.*, No. 09-cv-02540-WHA, 2010 WL 143484, at *2 (N.D. Cal. Jan. 8, 2010).  As one court has explained:

> Therefore, a party seeking to rely on the common interest doctrine does not satisfy its burden to justify a claim of privilege simply by demonstrating that a confidential communication took place between parties who purportedly share a common interest. Rather, the party seeking to invoke the doctrine must first establish that the communicated information would otherwise be protected from disclosure by a claim of privilege. For example, the content of the communication may comprise information shared in confidence by a client with his or her attorney, a legal opinion formed and advice given by the lawyer in the course of the attorney-client relationship, or a writing reflecting an attorney's impressions, conclusions, or theories. The next step in the analysis is to determine whether disclosing the information to a party outside the attorney-client relationship waived any applicable privileges.

*OXY Res. California LLC v. Superior Court*, 115 Cal. App. 4th 874, 890, (2004), *as modified* (Mar. 4, 2004).  So, the common interest doctrine serves as "an exception to ordinary waiver rules that applies when parties represented by separate counsel communicate in confidence about a matter of common legal interest, in furtherance of that common legal interest."  *Entangled Media*, 2025 WL 1069896, at *3 (citing *In re Pac. Pictures Corp.*, 679 F.3d 1121, 1129 (9th Cir. 2012)).  Though, "a shared desire to see the same outcome in a legal matter is insufficient to bring a communication between two parties within this exception.  Instead, the parties must make the communication in pursuit of a joint strategy in accordance with some form of agreement."  *In re Pac. Pictures Corp.*, 679 F.3d at 1129 (citations omitted).

The common interest doctrine does not apply to Haptic's disclosure to the funders.  Prior to sharing confidential communications with any potential litigation funder, Haptic and these

entities "entered into nondisclosure and common-interest agreements." (Dkt. No. 170-2 ¶ 10.) After entering into these agreements, Haptic shared documents prepared by its attorneys with the Funder and potential funders. (*Id.*) These communications were made *before* any funder agreed to fund Haptic's litigation. Even though at this point the funders and Haptic were negotiating in pursuit of Haptic's ultimate litigation against Apple, it cannot be said the parties had something more than "a shared desire to see the same outcome in a legal matter." *In re Pac. Pictures Corp.*, 679 F.3d at 1129 (citations omitted). Indeed, without first entering into an agreement to fund Haptic's litigation, it is unclear whether any of the potential funders, at the time of sharing information, even shared Haptic's desire for the same outcome in litigation. And because Haptic never reached an agreement with the potential funders, no common legal interest existed between them and Haptic even post-disclosure. As to the Funder, as Haptic and the Funder both attest, their agreement does not grant or vest any present or future interest in the patent to the Funder, so the interest does not apply even to it. (Dkt. No. 170-2 ¶¶ 19-21; *see Haptic v. Apple*, No. 25-mc-80114 (N.D. Cal.) (Dkt. No. 1-1 ¶ 9.); *cf. Rembrandt Patent Innovations, LLC v. Apple Inc.*, 14-cv-05094-WHA, 2016 WL 427363, at *7 (N.D. Cal. Feb. 4, 2016) (holding a common legal interest existed between the plaintiff and the named inventors because privileged information was shared only after the plaintiff had obtained an exclusive option to purchase the patent from them); *and Entangled Media*, 2025 WL 1069896 at *5 (holding the common interest doctrine does not extend to a plaintiff and its funder when the plaintiff "insists that it is the sole owner of the asserted patents and [the funder] has only a financial interest in the outcome of this litigation.") (citing *In re Lidoderm Antitrust Litig.*, No. 14-md-02521-WHO, 2016 WL 861019, at *4 (N.D. Cal. Mar. 7, 2016)).

Haptic posits it shares a common legal interest with both potential funders and the Funder "by virtue of [the] nondisclosure and common-interest agreements." (Dkt. No. 170 at 30.) As support, Haptic cites *Devon It*, where the court held a plaintiff and its litigation funder had "a common interest in the successful outcome of the litigation which otherwise [the plaintiff] may not have been able to pursue without the financial assistance of [the funder]." *Devon It, Inc. v. IBM Corp.*, No. 10-cv-02899, 2012 WL 4748160, *1 n.1 (E.D. Pa. Sept. 27, 2012). But beyond

14

noting the documents were disclosed "under a Confidentiality, Common Interest and NonDisclosure[*sic*] Agreement," the court does not explain how the parties' relationship triggered the common interest doctrine. *Id.* And Haptic does not explain how its agreements which "contemplated those funders' financial support of Haptic's anticipated litigation against Apple," (Dkt. No. 170 at 30), meant the parties *actually* shared a common legal interest at the time of disclosure. Extending the common interest privilege to when parties are merely negotiating such an agreement "would remove the common interest doctrine far from its historical antecedent, the joint defense doctrine." *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 580 (N.D. Cal. 2007); *see also Acceleration Bay LLC v. Activision Blizzard, Inc.*, Nos. 16-cv-453-RGA, 16-cv-454-RGA, 16-cv-455-RGA, 2018 WL 798731 at *3 (D. Del. Feb. 9, 2018) (declining to extend the common interest doctrine to a plaintiff and litigation funder where the parties did not show they "possessed identical interests in the patents-in-suit or were otherwise 'allied in a common legal cause' at the time of the communications.") (quoting *Leader Techs., Inc. v. Facebook, Inc.*, 719 F. Supp. 2d 373, 376 (D. Del. 2010)).

So, having found the common interest doctrine does not apply to the work-product privilege documents, the Court next considers whether Haptic's communications to the Funder and potential funders waived the work-product privilege over these documents.

### ii. Disclosure Waiver

"[D]isclosure of work product to a third party does not waive the protection unless such disclosure is made to an adversary in litigation or has substantially increased the opportunities for potential adversaries to obtain the information." *Sanmina*, 968 F.3d at 1121 (quoting 8 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2024 (3d ed. 2020)). So, disclosure only waives the privilege "where 'such disclosure, under the circumstances, is inconsistent with the maintenance of secrecy from the disclosing party's adversary.'" *Id.* (quoting *Rockwell Int'l Corp. v. U.S. Dep't of Justice*, 235 F.3d 598, 605 (D.C. Cir. 2001)).

Haptic has not disclosed attorney work product "to an adversary in litigation" nor has it "substantially increased the opportunities for potential adversaries to obtain the information.'" *Id.* at 1121 (quoting 8 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* §

1    2024 (3d ed. 2020)).  Haptic did not communicate any of the work product without first

2    "enter[ing] into nondisclosure and common-interest agreements with the litigation funders."  (Dkt.

3    No. 170-2 ¶ 10.)  Further, Haptic shared these communications in anticipation of litigation

4    between itself and Apple, not itself and the funders. Though Haptic ultimately did not enter into a

5    final funding agreement with potential funders, they were not Haptic's adversaries and disclosure

6    to them did not increase the opportunity for potential adversaries to obtain the work product.  The

7    parties had non-disclosure and common-interest agreements and the communications were shared

8    in furtherance of Haptic's efforts to sue Apple, not these entities.

9          *Sanmina*, 968 F.3d at 1121, is instructive. There, the defendant enlisted a third-party

10   auditing firm—DLA Piper—to prepare a valuation report after the IRS began examining the

11   defendant's tax returns.  *Id.* at 1112.  The defendant then disclosed the report to the IRS, but the

12   report included reference to "two memoranda authored by Sanmina's in-house counsel."  *Id.*  The

13   IRS subsequently sought production of these attorney memoranda; the defendant claimed the

14   documents were protected from disclosure by the work-product doctrine.  *Id.*  The Ninth Circuit

15   agreed.  *Id.* at 1123.  First, the court concluded DLA Piper was not a potential adversary "with

16   respect to the memoranda" because "the Attorney Memos were prepared in anticipation of a

17   dispute between Sanmina and the IRS, not between Sanmina and DLA Piper, and they involve

18   legal assessments of potential tax implications for Sanmina, which would likely be irrelevant in

19   any potential dispute between Sanmina and DLA Piper."  *Id.* (citing *United States v. Deloitte LLP*,

20   610 F.3d 129, 140 (D.C. Cir. 2010)).  And even though the defendant shared the work product

21   documents with DLA Piper to prepare a report to share with an adversary (the IRS), the defendant

22   "'had a reasonable basis for believing that [DLA Piper] would keep the [Attorney Memos]

23   confidential' in the process of producing its valuation analysis."  *Id.* (quoting *Deloitte*, 610 F.3d at

24   141).

25          Similarly here, Haptic's work product documents were not shared with an adversary and

26   the nondisclosure and common interest agreements gave Haptic a reasonable basis for believing

27   the Funder and potential funders would keep the documents confidential. *See Continental Circuits*

28   *LLC v. Intel Corp.*, 435 F. Supp. 3d 1014, 1022 (D. Ariz. 2020) (collecting authorities for the

United States District Court
Northern District of California

1    proposition that "several courts have held that work product protection for litigation funding

2    documents is not waived when such documents contain confidentiality provisions and are

3    disclosed to litigation funders with common interests").  So, Haptic's disclosure to these third

4    parties did not waive the work-product privilege.  *See Entangled Media*, 2025 WL 1069896 at *6

5    (holding the plaintiff did not waive its work-product privilege over non-publicly filed or

6    referenced materials it shared with a litigation funder).

7            *Waymo v. Uber* does not support finding a waiver here.  There the defendant retained a

8    third party to investigate an entity and individuals with whom it was contemplating entering into

9    an agreement.  The court held the defendant's disclosure of the investigation report to the entity

10   and persons being investigated was disclosure to an adversary and therefore waived the work-

11   product privilege.  *Waymo LLC v. Uber Techs., Inc.*, No. 17-cv-00939-WHA (JSC), 2017 WL

12   2485382, at *12-13 (N.D. Cal. June 8, 2017).  The disclosure here is not similar.  Haptic did not

13   disclose a report investigating potential funders to the potential funders; instead, it disclosed patent

14   evaluation and damages valuation information to the potential funders to facilitate their assistance

15   with litigation against Apple, Haptic's adversary.

16          So, Haptic did not waive the work-product protections over its logged documents by

17   sharing these with the Funder or with potential litigation funders.

18                                    *        *        *

19          Accordingly, Haptic's logged documents are protected from production by the work-

20   product privilege.  And, the privilege was not waived by disclosure as the Funder and potential

21   funders are not Haptic's adversaries, and Haptic's disclosure has not "substantially increased the

22   opportunities for potential adversaries to obtain the information."  *Sanmina*, 968 F.3d at 1121

23   (cleaned up).  Finally, Apple does not make any showing it has a substantial need for this

24   information sufficient to require disclosure of these documents.  Fed. R. Civ. Proc. 26(b)(3)(A)(ii).

25                                  **CONCLUSION**

26          For the reasons stated above, Apple's motion to compel is DENIED and the Funder's and

27   Haptic's joint motion to quash is GRANTED.

28          This Order disposes of Docket No. 164 in *Haptic v. Apple*, No. 24-cv-02296, and Docket

United States District Court
Northern District of California

1    No. 1 in *Haptic v. Apple*, No. 25-mc-80114.

2        **IT IS SO ORDERED.**

3    Dated: June 3, 2025

4

5

6        JACQUELINE SCOTT CORLEY
         United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California